# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NYKOA JONES,<br>o/b/o E.S., a minor | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-779-PJC |
| | ) | |
| MICHAEL J. ASTRUE,<br>Commissioner, Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Nykoa Jones ("Jones") on behalf of her minor son, E.S. ("Claimant"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

Claimant was 7 years old at the time of the hearing before the ALJ on March 16, 2010. (R. 27). Jones testified that Claimant had an individualized education program ("IEP") and was attending an alternative school. (R. 34). She said that he attended the alternative school because

he could not function in a regular classroom.  (R. 34-35).  The specialized classroom had three teachers with seven to nine students.  *Id.*  Jones testified that Claimant was placed in this specialized classroom due to repeated behavior problems in school that ranged from destroying things in the classroom to hitting his peers.  (R. 35).  She testified that she still received telephone calls regarding Claimant's behavior, even in the specialized classroom.  *Id.*  The week before the hearing, Claimant had been suspended from school for two days.  *Id.*

Jones testified that Claimant had temper tantrums that were not like behavior she saw in her other three children.  (R. 32-33).  She did not know what set Claimant off, and he would switch from happy to angry very quickly.  (R. 33).  These outbursts could last from 30 minutes to an hour.  (R. 33-34).  Claimant's stepfather testified that when Claimant because upset, he would go into a rage.  (R. 37).  He said that it had happened in the car the morning of the hearing, and Claimant engaged in kicking, screaming, and "tearing stuff up."  *Id.*  The stepfather said this occurred on a daily basis.  *Id.*  He also testified that Claimant would slap himself and state that he wanted to kill himself.  *Id.*  Jones testified that Claimant would bang his head on the wall and attempt to wrap something around his neck, saying he was going to kill himself.  (R. 38).

Jones testified that, in addition to the temper tantrums, Claimant would misbehave in other ways.  (R. 34).  Jones gave examples of Claimant ripping his shirt intentionally during a church service, throwing heads of lettuce at a grocery store, and pulling clothes from hangers at clothing stores.  *Id.*

Jones testified that Claimant was attending counseling at Parkside at the time of the hearing, and his physician said that he had a mood disorder.  (R. 36).

The administrative file contains a two-page single-spaced document that states that it is a copy of the principal's discipline file from Eugene Field Elementary School listing behavioral

problems of Claimant in August and September 2008. (R. 286-87). An assessment by the school

psychologist on September 8, 2008 said that results of parent and teacher surveys were consistent

with ADHD. (R. 288-89). Assessments by the school counselor and the kindergarten teacher

from Eugene Field dated October 6, 2008 indicated that Claimant scored in the "very often"

category for multiple behaviors such as being easily distracted and having difficulty doing quiet

activities. (R. 292-95). His classroom behavior was assessed as problematic due to problems

with following directions and disrupting the class. *Id.* On October 7, 2008, the principal of

Eugene Field restricted Claimant to attending school for one-half day due to his behavior

problems. (R. 297).

  Claimant was seen at age 5 by David L. Shadid, D.O. on October 13, 2008 for ADHD

symptoms and for "being markedly oppositional and aggressive." (R. 154). Dr. Shadid

diagnosed Claimant on Axis I[1] with ADHD, combined, and oppositional defiant disorder. *Id.* He

scored Claimant's current Global Assessment of Functioning ("GAF")[2] as 50. *Id.*

  The administrative record includes a Social Security Administration ("SSA") form for

teacher evaluation that was completed by Ms. Dease Hall, kindergarten teacher, on November 24,

---

[1] The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereafter "DSM-IV").

[2] The GAF score represents Axis V of a Multiaxial Assessment system. DSM-IV at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id*. at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id*. at 34. A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*. A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id*.

2008. (R. 158-65). Ms. Hall indicated that she had known Claimant since October 21, 2008, so apparently her responses were based on about one month's interaction with Claimant. (R. 158). Unfortunately, it appears that not all of her marks on the form were dark enough to show up on the reproduced copy that is included in the record. (R. 158-65). In the domain of attending and completing tasks, she appears to have indicated that Claimant had no problem or a slight problem in several areas. (R. 160). Her narrative comment appears to state that Claimant was sometimes not able to focus on work or became uncooperative and rebellious in the classroom. *Id.* In the domain of interacting and relating with others, Ms. Hall appears to have indicated that Claimant had a slight problem with most of the activities. (R. 161). Her narrative comment states that claimant demonstrated inappropriate behaviors if he had not taken his medication. *Id.* Ms. Hall indicated that Claimant, in the domain of caring for himself, had an obvious problem with several activities. (R. 163). In her narrative comments, she again seemed to state that when he had not taken his medication, Claimant would call other students inappropriate names or hit them. *Id.*

Agency nonexamining consultants Charles Delhotal, M.D. and Cynthia Kampschaefer, Psy.D. completed a Childhood Disability Evaluation Form dated February 19, 2009. (R. 166-71). They found no limitation in the domains of acquiring and using information, moving about and manipulating objects, caring for himself, and health and physical well-being. (R. 168-69). In the domain of attending and completing tasks, they found that Claimant's difficulties were less than marked, citing to Ms. Hall's evaluation, Dr. Shadid's evaluation, and the report of Claimant's mother that his behavior had improved somewhat with medication. (R. 168). In the domain of interacting and relating with others, they found that Claimant had marked limitations, citing to the same sources. *Id.*

Hawthorne Elementary records show that Claimant was referred for discipline and there were parental conferences on multiple occasions in late 2008 and early 2009. (R. 299-305).

Ms. Hall completed a second teacher questionnaire dated June 12, 2009. (R. 209-16). She indicated that Claimant had no problems in the domains of acquiring and using information and moving about and manipulating objects. (R. 210, 213). In the domain of attending and completing tasks, Ms. Hall indicated that Claimant had a serious problem in paying attention when spoken to directly, and an obvious problem in refocusing to task when necessary and changing from one activity to another without being disruptive. (R. 211). In the domain of interacting and relating with others, she indicated that he had a very serious problem in expressing anger appropriately, and a serious problem with respecting and obeying adults in authority. (R. 212). She rated Claimant as having an obvious problem in playing cooperatively with other children and in following rules. *Id.* He had a slight problem in making and keeping friends, and no problem in eight other areas. *Id.* Ms. Hall found that Claimant, in the domain of caring for himself, had a very serious problem handling frustration appropriately. (R. 214). Claimant had a serious problem in identifying and appropriately asserting emotional needs, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. *Id.* The narrative comments made by Ms. Hall are not legible on the copy in the administrative file. *Id.*

A second Childhood Disability Evaluation Form was completed by agency nonexamining consultants David Bissell, M.D. on July 2, 2009, and Phillip Massad, Ph.D. on June 30, 2009. (R. 218-23). They found that Claimant had no limitations in the domains of acquiring and using information, moving about and manipulating objects, and caring for himself. *Id.* They found a less than marked limitation in the domain of attending and completing tasks, and a marked

limitation in interacting and relating with others.  (R. 220).  In making these assessments, the consultants cited to Ms. Hall's second evaluation form and to April 2009 records of Dr. Shadid. *Id.*

Claimant was admitted to Shadow Mountain Behavioral Health facility on May 18, 2009 with findings that he presented an immediate potential danger to others due to aggressive and violent acts and homicidal statements.  (R. 183-208, 224-53).  His provisional intake Axis I diagnoses were mood disorder not otherwise specified; disruptive behavior disorder not otherwise specified; and sibling relational problems.  (R. 183).  His current GAF was scored as 25.  *Id.*  The intake assessment stated that Claimant had gone into a rage, obtained 2 butcher knives, and chased his siblings stating that he was going to kill them.  (R. 184).  It also stated that Claimant had been suspended from school on three occasions for hitting classmates.  *Id.*  The psychiatrist later gave the admitting diagnoses as disruptive behavior disorder, ADHD by history, and medication-induced behavior problem.  (R. 195).  Claimant was discharged on May 28, 2009.  (R. 207).  The discharge summary listed his discharge diagnoses as disruptive behavior disorder and medication-induced behavior problem.  (R. 250).  His GAF on discharge was scored as 40.  (R. 251).

Claimant was assessed by a Tulsa Public Schools school psychometrist in August 2009. (R. 254-58).  The assessment concluded that Claimant met the criteria for special education due to his suspected ADHD.  (R. 258).  An IEP was completed in September 2009.  (R. 264-67).

Records from Parkside Psychiatric Hospital & Clinic indicate that Claimant received services in 2009 and 2010.  (R. 325-44).  One document stated Claimant's Axis I diagnoses as ADHD and unspecified disturbance of conduct.  (R. 335).  His GAF was scored as 49.  *Id.*

Documents from Anderson Elementary School state that on March 8, 2010, Claimant

became angry, threw his lunch on the ceiling, cursed, hit himself, and threatened to bring a knife to school to kill his teachers and then himself. (R. 345-49).

Melissa Williams, NCC LPC Candidate, with Dayspring Behavioral Health, wrote a 2-page report dated March 9, 2010 recounting observations she made of Claimant over a 2-week period. (R. 350-51).

Lisa Pugsley wrote an undated "To Whom It May Concern" letter in which she identified herself as an alternative education teacher who had Claimant as a student for two months at the time she wrote the letter. (R. 352). She said that Claimant's behavior was fine on good days, but when he became angry, he would hit, kick, or bite people, and he would knock over trash cans, desks, chairs, or items on shelves. *Id.* Ms. Pugsley also detailed an incident that occurred on Claimant's first day of school on January 14, 2010, and a second incident that occurred on March 2, 2010. (R. 353-54).

**Procedural History**

On November 3, 2008, Jones protectively filed for supplemental security income benefits under Title XVI, 42 U.S.C. § 1381 *et seq.*, on behalf of Claimant. (R. 79-85). Claimant's application for benefits was denied in its entirety initially and on reconsideration. (R. 46-49, 52-55). A hearing before ALJ John Volz was held March 16, 2010, in Tulsa, Oklahoma. (R. 24-43). By decision dated April 8, 2010, the ALJ found that Claimant was not disabled at any time since the date the application was filed. (R. 9-19). On October 13, 2010, the Appeals Council denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

## Social Security Law and Standard of Review

A child under eighteen years of age is "disabled" for the purposes of determining benefits if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). A three-step sequential process guides the Commissioner's determination of whether a child meets the disability criteria. 20 C.F.R. § 416.924(a). The ALJ must determine (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child's impairment or combination of impairments is severe; and, (3) if severe, whether the child's impairment "meets, medically equals, or functionally equals the listings" set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The third step requires an initial determination of whether the impairment meets the requirements of a listing by satisfying "all of the criteria of that listing, including any relevant criteria in the introduction."[3] 20 C.F.R. § 416.925(c)(3). Next, if the child's impairment fails to meet the criteria, there must be a determination of whether it "medically equal[s] the criteria of a listing." 20 C.F.R. § 416.925(c)(5). An impairment is the medical equivalent of a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Medical equivalence can be found where the child has an impairment included in the listings, but "do[es] not exhibit one or more of the findings specified" for the particular listing examined, or "one or more of the findings is not as severe as specified," yet there are

---

[3]     An impairment cannot meet one of the listings merely on the basis of a diagnosis, there must be "a medically determinable impairment(s) that satisfies all of the criteria." 20 C.F.R. § 416.925(d).

"other findings related to [the] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(i)-(ii). Last, if the impairment neither meets nor medically equals any listing, there must be a determination of "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a).

For an impairment to be the functional equivalent of a listing, it must be of listing-level severity because it results in either marked[4] limitations in two domains of functioning or an extreme[5] limitation in one domain. 20 C.F.R. § 416.926a(a). In assessing functional limitations, the ALJ considers all relevant factors outlined in 20 C.F.R. §§ 416.924a, 416.924b, and 416.929, including (1) how well the child initiates and sustains activities, whether he needs extra help, "and the effects of structured or supportive settings"; (2) how the child functions in school; and (3) how the child is affected by medications or treatments. 20 C.F.R. § 416.926a(a)(1)-(3). The

---

[4]     There is a "marked" limitation in a domain where the impairment(s) interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* The regulations further state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

[5]     There is an "extreme" limitation in a domain where the "impairment(s) interferes *very* seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i)(emphasis added). "Extreme" refers to the worst limitations, but "does not necessarily mean a total lack or loss of ability to function." *Id.* "Extreme" represents the equivalent of functioning shown by a valid score at least "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

ALJ examines whether the child functions "appropriately, effectively, and independently" in six domains, *i.e.*, "broad areas of functioning intended to capture all of what a child can or cannot do," compared with the abilities of other unimpaired children the same age. 20 C.F.R. § 416.926a(b)(1). The six domains are "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Claimant was at all times a school-age child. (R. 12). At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity. *Id.* At Step Two, the ALJ found that Claimant's ADHD and his oppositional defiant disorder or disruptive behavior disorder, not otherwise specified, were severe impairments. *Id.* At Step Three, the ALJ found that Claimant's severe impairments did not meet a listing or medically equal the criteria of any listing. *Id.*

The ALJ then evaluated the six domains set forth in 20 C.F.R. § 416.926a(b)(1)(i)-(vi) to analyze whether Claimant's severe impairments were functionally equivalent to a listing. He found that Claimant had no limitations in the domains of acquiring and using information, moving about and manipulating objects, caring for himself, or health and physical well-being. (R. 15-19). The ALJ found that Claimant had less than marked limitation in attending and completing tasks. (R. 16). He noted that Claimant had serious problems in this domain with easy distractibility. *Id.* He noted two positive comments by teachers that Claimant participated fairly well during instructional periods and usually completed assignments without incident. *Id.* The ALJ found that Claimant had a marked limitation in interacting and relating with others, noting that Ms. Hall rated him as having a very serious problem in this domain. R. 16-17). He also noted Claimant's multiple school suspensions and his threats to his siblings. (R. 17). Because he determined that Claimant had neither an "extreme" limitation in one domain of functioning nor a "marked" limitation in two domains, the ALJ found that Claimant was not disabled since the November 3, 2008 filing date.

## Review

Claimant asserts that the ALJ's Step Three evaluation and the credibility assessment were not sufficient. The undersigned agrees that the credibility assessment of the ALJ did not meet legal standards and therefore reverses and remands for further proceedings.

"Credibility determinations are peculiarly the province of the finder of fact." *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir.1990). However, the determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quotation omitted). Social Security Ruling 96-7p provides the following guidelines for credibility assessments:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96-7p, 1996 WL 374186 at *1. "This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." *Id*. at *4. In the case of a child claimant, "the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Briggs ex rel. Briggs*, 248 F.3d 1235, 1239 (10th Cir. 2001).

The ALJ did not make a credibility assessment. (R. 9-19). The ALJ's failure to perform an adequate credibility assessment fatally undermines the ALJ's decision, and this omission must be addressed on remand. *Briggs*, 248 F.3d at 1239.

Because the Court finds that reversal is required by the issue of credibility, the undersigned does not address the other issues raised by Jones in detail. The Court notes concerns, however, regarding two aspects of the expert opinion evidence upon which it appears that the ALJ relied in making his determination regarding the degree of Claimant's limitation in the six domains.

The first area of concern to the undersigned is the discrepancy between the SSA forms completed by Ms. Hall and those completed by the agency's nonexamining consultants. (R. 158-71, 209-16, 218-23). Both times that Ms. Hall completed the SSA form provided to her, she found that Claimant had problems in the domain of caring for himself. (R. 163, 214). On the second form, after she had been Claimant's kindergarten teacher for about seven months, Ms. Hall found that Claimant had a very serious problem in this domain in his handling frustration appropriately. (R. 214). "Very serious" was the most extreme category allowed by the SSA form. *Id.* Ms. Hall also found a serious problem in three other areas in this domain. *Id.* In spite of this evidence from the teacher who was most acquainted with Claimant's day-to-day functioning, the agency nonexamining consultants found no limitation at all in the domain of Claimant's caring for himself. (R. 169, 221). The consultants gave no narrative explanation for this finding. *Id.*

The failure of the nonexamining consultants to explain why their opinion evidence regarding the domain of Claimant's caring for himself differed from the evidence of Ms. Hall, to which they cited in support of their other findings, raises questions as to whether their opinion evidence can be substantial evidence supporting the ALJ's decision. The Tenth Circuit has long held that opinions of physicians who have examined the claimant only once or who are nonexamining consultants are not substantial evidence if those opinions are forms with boxes

13

checked and not accompanied "by thorough written reports." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). In *Frey*, the treating physician had testified that the claimant had limitation in use of his right arm that included chronic pain. *Id.* at 513. The examining physician checked a box stating that the claimant had no limitation in the use of his right arm. *Id.* at 515. The examining consultant's opinion evidence was not substantial evidence supporting the ALJ's conclusion that the claimant could perform the entire range of sedentary work. *Id. See also Lee v. Barnhart*, 117 Fed. Appx. 674, 678-79 (10th Cir. 2004) (unpublished) (criticizing ALJ's reliance on nonexamining consultant opinion form that was inconsistent with examiner's report and the ALJ's failure "to explain or to reconcile this discrepancy").

A second aspect of the consultants' reports that is of concern to the undersigned is whether the nonexamining consultants' reports were "stale" and therefore could not be substantial evidence supporting the ALJ's decision. This Court recently ruled that consulting reports were stale and could not be relied upon as substantial evidence when the claimant's health had changed due to two surgeries after those reports had been completed. *Naugle v. Astrue*, 2011 WL 3880929 (N.D. Okla.). In the present case, Claimant at age 6 was hospitalized for eleven days for psychiatric treatment, and this evidence supports Jones' argument that her son's limitations are extreme, rather than marked, as found by the consultants and the ALJ. There is no reference to Claimant's hospitalization, which had occurred only weeks earlier, in the report completed by the agency nonexamining consultants, and therefore it appears that the consultants did not have access to these records at the time they completed their report. (R. 218-23). Given the timing of Claimant's hospitalization and the consultants' report, there is a serious question regarding whether that report was stale and therefore was not substantial evidence supporting the ALJ's decision.

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 4th day of January, 2012.

_____

Paul J. Cleary
United States Magistrate Judge